UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD QUIPP, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company, et al.,<br><br>          Defendant. | Case No.: 17cv290 DMS (KSC)<br><br>**ORDER (1) DENYING GMG MOTORS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) DENYING BMW OF NORTH AMERICA, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This case comes before the Court on the motions for partial summary judgment filed by Defendants GMG Motors, Inc. d/b/a/ BMW of San Diego ("BMWSD") and BMW of North America, LLC ("BMWNA"). Plaintiff filed an opposition to each motion, and each Defendant filed a reply brief. After reviewing the parties' briefs and the record on file in the case, the motions are denied.

**I.**

**BACKGROUND**

In October 2014, Plaintiff Donald Quipp began looking for a new car. (Pl.'s Resp. and Objections to Def. GMG Motors, Inc.'s Separate Statement of Uncontroverted Facts and Conclusions of Law ("Pl.'s Resp. to SOF"), Fact No. 2.) Plaintiff test drove some new and used vehicles, then decided to look at a BMW 335D that he found on Autotrader.com

1

that was being offered for sale by BMW of San Diego. (*Id.*, Fact Nos. 3-4.) Plaintiff went to the dealership on November 2, 2014, intending only to take the vehicle for a test drive. (*Id.*, Fact No. 6.) While at the dealership, Plaintiff went to the certified pre-owned ("CPO") section and found a different BMW 335D. (*Id.*, Fact No. 7.) This vehicle came with a remaining new car warranty and a CPO warranty. (*Id.*, Fact No. 16.) Plaintiff took that vehicle for a test drive, and then left the dealership to consider other options and do more research regarding pricing. (*Id.*, Fact No. 18.) However, he later went back to the dealership and purchased the vehicle for $40,969.82. (*Id.*, Fact No. 21.)

At the time of purchase, BMW of San Diego provided Plaintiff with a "Certified Pre-Owned Vehicle Inspection Checklist," which Plaintiff signed. (*Id.*, Fact No. 22; Decl. of Mark O'Connor in Supp. of Pl.'s Opp'n to BMWNA's Mot. ("O'Connor BMWNA Decl."), Ex. G.) The Checklist reflects the vehicle was enrolled in the CPO Program on October 22, 2014. (*Id.*) According to BMW of North America's "Certified Pre-Owned BMW Center Operations Manual," it is the responsibility of BMW Centers "to ensure that each Certified Pre-Owned BMW is properly and thoroughly inspected, and conforms to BMW NA's standards and guidelines for maintenance, mechanical condition and cosmetic appearance." (Decl. of Mark O'Connor in Supp. of Pl.'s Opp'n to BMWSD's Mot. ("O'Connor BMWSD Decl."), Ex. L at i.) To comply with the CPO Program, the dealer must follow several steps set out in the Manual. (*Id.* at 8.) At step three, the dealer must "Fill out CPO Vehicle Inspection Checklist completely <u>prior</u> to performing any reconditioning or repairs." (*Id.*; *see also* O'Connor BMWNA Decl., Ex. M at 46-47 (declaration of BMWSD's pre-owned sales manager confirming CPO Checklist is to be filled out "prior to any reconditioning that the vehicle needs undertaken in order for it to be certified[.]") After the repairs are completed, the dealer must "Review, approve, sign and date the CPO Inspection Checklist[.]" (O'Connor BMWSD Decl., Ex. L at 8.) The dealer must then "Complete the CPO Statement of Certification and Coverage and deliver to the Sales Department for presentation to the final retail customer." (*Id.*) After this step,

2

17cv290 DMS (KSC)

certification is complete. (*Id.*) When the vehicle is delivered to the buyer, the dealer must present the buyer with a copy of the CPO Inspection Checklist. (*Id.*)

The Checklist for Plaintiff's vehicle reflects BMW of San Diego employee Michael Reich inspected the vehicle on October 28, 2014. (Pl.'s Resp. to SOF, Fact No. 25.) Mr. Reich did not remember when he completed the Checklist for Plaintiff's vehicle, but he understood that checklists were to be completed after the repairs were performed. (O'Connor BMWNA Decl., Ex. J at 23.) Mr. Reich testified that was his practice, (*id.* at 24), and that he certified approximately five to six cars per month over the previous seven years. (*Id.* at 25.) During the inspection of Plaintiff's vehicle, Mr. Reich inspected the trunk and replaced three tires. (Pl.'s Resp. to SOF, Fact No. 50.) The three tires that were replaced "were worn badly on the outside edges all the way down to the wear bars[.]" (*Id.*, Fact No. 58.) The condition of those tires, however, was not indicated on the Checklist. Rather, the Checklist reflected the condition of the new tires. The repair order associated with the CPO Checklist for Plaintiff's vehicle also "showed the underbody shield was torn and replaced during the repair/reconditioning process." (*Id.*, Fact No. 59.) That condition was also not reported on the Checklist. (*Id.*)

The day after Plaintiff purchased the vehicle, the trunk light began to illuminate. Plaintiff alleges the trunk latch had to be repaired at least three times, that during the course of the warranty period, the vehicle had to be taken in for repairs on approximately seven separate occasions for engine misfires, rough idling and other engine and emissions failures, and that the vehicle has been out of service for at least sixty days. (First Am. Compl. ¶¶ 27-28.) In January 2016, Plaintiff requested that BMW of North America repurchase the vehicle, but BMW refused that request. (*Id.* ¶ 29.)

On January 11, 2017, Plaintiff filed the present case against BMWNA and BMWSD in San Diego Superior Court. In the Complaint, Plaintiff alleged claims for violation of the Consumers Legal Remedies Act ("CLRA"), California Business and Professions Code § 17200 ("UCL"), California Business and Professions Code § 17500 ("FAL"), California Vehicle Code §§ 11713 and 11713.18, the Song-Beverly Consumer Warranty Act and the

Magnuson-Moss Warranty Act, as well as claims for declaratory and injunctive relief, fraud and concealment and negligent misrepresentation. Both Defendants filed Answers to the Complaint in Superior Court, but then several days later they removed the case to this Court on the basis of federal question jurisdiction. Amended Answers were filed, after which Plaintiff filed an Amended Complaint. After discovery was completed, Defendants filed the present motions for partial summary judgment.

## II.
## DISCUSSION

Both Defendants move for partial summary judgment on certain of Plaintiff's claims. Specifically, they argue they are entitled to summary judgment on Plaintiff's claims under the CLRA, UCL, FAL, Vehicle Code § 11713, and Plaintiff's claims for fraud and negligent misrepresentation.[1]

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

---

[1] On the fraud and negligent misrepresentation claims, Defendants argue those claims also fail because they were not pleaded with the requisite particularity. (Mem. of P. & A. in Supp. of BMWSD's Mot. at 21.) However, Defendants waived that argument by not raising it in their first responsive pleading. *See* 2 James Wm. Moore, *et al.*, Moore's Fed. Practice § 9.03[5] (2018). Accordingly, the Court declines to address that argument further.

4

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* See also *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Here, Defendants have failed to meet their burden to show the absence of genuine issues of material fact on the claims at issue. For instance, Mr. Reich testified to his practice of completing the CPO Checklists *after* the vehicles were repaired or reconditioned, (O'Connor BMWNA Decl., Ex. J at 24), which is contrary to the direction in the CPO Manual that those Checklists be completed *prior* to any repairs or reconditioning. (O'Connor BMWSD Decl., Ex. L at 8.) Although Mr. Reich did not remember whether he followed that practice in inspecting Plaintiff's vehicle, a comparison of the repair orders for Plaintiff's vehicle and the Checklist completed thereafter suggests that he did. (O'Connor BMWNA Decl., Ex. M at 60.) And Plaintiff declares he:

> would not have bought the 2011 BMW 335d ('the subject vehicle') if at the time of purchase [he] had been provided with a truthful and accurate CPO Checklist that showed the true condition of the vehicle at the time it was initially inspected at the beginning of the CPO inspection process, including the following issues: a) that three tires were badly worn down to the wear bars and required replacement; b) that the underbody shield required replacement; c) that the trunk latch required repair; d) that there was a turbo oil leak that required repair.

(Decl. of Donald Quipp in Supp. of Pl.'s Opp'n to BMWNA's Mot. ¶ 3.) All of this evidence raises a genuine issue of material fact on each of the claims at issue in the present

motions. Accordingly, Defendants are not entitled to summary judgment on any of these claims.

### III.
### CONCLUSION AND ORDER

For these reasons, the Court denies Defendants' motions for partial summary judgment. The Court confirms the pretrial conference currently scheduled for July 27, 2018, and the trial scheduled for August 27, 2018.

**IT IS SO ORDERED**.

Dated: July 6, 2018

Hon. Dana M. Sabraw
United States District Judge